51 F.3d 267
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James B. MAYNARD, Plaintiff-Appellant,
v.
NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellee.
 No. 94-1285.
 United States Court of Appeals, Fourth Circuit.
 Argued: February 1, 1995.
Decided: March 27, 1995.
 
 ARGUED: Francis Paul Hajek, WILSON & HAJEK, P.C., Virginia Beach, VA, for Appellant. Richard Edward Ladd, Jr., PENN, STUART, ESKRIDGE & JONES, Abingdon, VA, for Appellee. ON BRIEF: Otis K. Forbes, III, WILSON & HAJEK, P.C., Virginia Beach, VA, for Appellant. Wade W. Massie, PENN, STUART, ESKRIDGE & JONES, Abingdon, VA, for Appellee.
 Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 James B. Maynard, a locomotive engineer, strained his left elbow on November 1, 1990, when he tried unsuccessfully to open a stuck cab door to Locomotive 3218, owned by his employer, Norfolk and Western Railway Company. The injury occurred at the beginning of Maynard's work day when Maynard tried to enter the cab of the locomotive, which was parked on a side track. He sustained further injury during the two weeks after his elbow injury when he returned to work and strained his neck and shoulder from climbing onto locomotives while his left elbow was in a sling. Maynard sued Norfolk and Western for damages under the Boiler Inspection Act, 45 U.S.C. Sec. 23,* and under the Federal Employer Liability Act (FELA), 45 U.S.C. Sec. 51. The district court dismissed the Boiler Inspection Act claim on Norfolk and Western's motion for summary judgment because the locomotive was not "in use" when Maynard hurt his elbow. Following a jury trial on the FELA claim, the jury rendered a verdict in favor of Norfolk and Western. Maynard contends that the district court erred both in ruling as a matter of law that the locomotive was not in use and in instructing the jury on the FELA claim. He also contends the jury's verdict was against the weight of the evidence. We disagree and accordingly affirm.
 
 
 2
 The Boiler Inspection Act provided at the time of this incident:
 
 
 3
 It shall be unlawful for any railroad to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such railroad without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of sections 22 to 29 and 31 to 34 of this title and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for.
 
 
 4
 45 U.S.C. Sec. 23 (emphasis added). The Act does not impose liability on a railroad for locomotives in repair or not in use. See Angell v. Chesapeake & Ohio Ry. Co., 618 F.2d 260, 261 (4th Cir.1980). In this case, Maynard had a duty to inspect the locomotive for any defects, which must be noted on Norfolk and Western's ME-60 form, as well as a duty to assure that any unsafe condition is corrected before putting the locomotive in use. Maynard injured himself before he had even entered the cab of the locomotive. At the time, the locomotive was parked on a side track, dormant and unconnected to any cars. As Maynard climbed on to the locomotive, he tried to open the door to the cab with his right hand, unsuccessfully. He then tried with "full force" to open the door with his left hand, while bracing with his right hand, and strained his left elbow in the process. When that effort proved unsuccessful, Maynard went around and entered on the other side of the cab and then kicked open the stuck door from the inside. At the time of the incident the locomotive had not been inspected, the ME-60 form had not been filled out, and the locomotive had not been put into use. Accordingly, the strict liability of the Boiler Inspection Act had not yet become applicable. See Angell, 618 F.2d at 261-62 (train was in use when all servicing, maintenance, and repair work had been completed). See also Pinkham v. Maine Cent. R.R. Co., 874 F.2d 875, 882 (1st Cir.1989) (train not in use when en route for repairs); Estes v. Southern Pac. Transp. Co., 598 F.2d 1195, 1198-99 (10th Cir.1979) (train not in use when moving interstate or foreign commerce); cf. Trinidad v. Southern Pac. Transp. Co., 949 F.2d 187, 189 (5th Cir.1991) (train was not in use for purposes of Safety Appliance Act because the injury occurred during a predeparture brake inspection).
 
 
 5
 On the FELA claim, Maynard contends that the district court erred in refusing to instruct the jury as he requested. While the court did not instruct the jury exactly as Maynard had requested, it adequately covered the subject matter in its own form of instructions. Maynard is not entitled to have his form of jury instructions given to the jury so long as the district court adequately instructs on the law with respect to the issues properly submitted to the jury. See, e.g., Chavis v. Finnlines Ltd., O/Y, 576 F.2d 1072, 1076 (4th Cir.1978) (affirmance of the district court is required as long as the instructions, taken as a whole, fairly and adequately state the pertinent legal principles). Moreover, we note that several of the requested instructions related to damages were rendered moot by the jury's verdict for the defendant.
 
 
 6
 Finally, Maynard contends that the district court should have granted his motion for a new trial because the jury's verdict was against the clear weight of the evidence on Norfolk and Western's negligence in allowing Maynard to use a locomotive with a defective door and in allowing him to return to work with his elbow in a sling. We reject this contention. No evidence was presented showing prior knowledge by the railroad that the door was stuck, and Maynard's return to work was entirely voluntary, following advice from his personal doctor. The district court acted well within its discretion in refusing to disturb the jury's verdict.
 
 
 7
 AFFIRMED..
 
 
 
 *
 Effective July 5, 1994, this section was modified and recodified as 49 U.S.C. Sec. 20701. Because this incident occurred in November 1990, we apply the earlier version